IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MAIN & ASSOCIATES, INC d/b/a SOUTHERN SPRINGS HEALTHCARE FACILITY, ) ) ) ) | |
| PLAINTIFF, ) ) | |
| v. ) ) | CASE NO. 2:10-cv-326-MEF |
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, ) ) ) ) | (WO - PUBLISH) |
| DEFENDANT. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Main & Associates, Inc., a corporation which does business as Southern Springs Healthcare Facility ("Southern Springs") brought this action in the Circuit Court of Bullock County, Alabama. Southern Springs alleged a number of claims all purporting to be pursuant to the laws of the State of Alabama arising out of the decisions made by Defendant Blue Cross and Blue Shield of Alabama ("BCBS") regarding coverage and benefits determinations for enrollees in BCBS's Medicare Advantage plans. Invoking this Court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b) under a variety of theories, BCBS removed the case to this Court. Now pending before the Court is the Plaintiff's Motion to Remand (Doc. # 7). For the reasons set forth below, the motion is due to be GRANTED.

### FACTUAL AND PROCEDURAL HISTORY

Medicare is a social security program that provides federally subsidized health

insurance for the aged and disabled. The Department of Health and Human Services, acting through, the Centers for Medicare and Medicaid Services administers the Medicare program. Benefits available through Medicare are prescribed by law and divided into four "parts." Part A provides hospital care, skilled nursing care, home health care, and hospice care benefits. Part B provides coverage for services of physicians and out-patient services. Part D provides benefits for prescription drugs. Part C gives Medicare beneficiaries the option to contract with private health insurance plans to obtain the benefits normally available under Parts A and B, as well as other coverage. Such privately administered plans are known as Medicare Advantage Plans.[1]

BCBS is a private health insurance company. In addition to its regular health insurance plans and products, BCBS offers a Medicare Advantage Plan specifically tailored for Medicare beneficiaries seeking insurance under Part C. At issue in this lawsuit is a BCBS Medicare Advantage Plan known as Blue Advantage. When Medicare recipients enroll in Blue Advantage, Medicare no longer pays providers of covered services directly when the recipients receive covered medical treatment. Medicare pays BCBS a set monthly fee called a capitation rate to administer and manage the enrollee's healthcare insurance. In order to obtain medical treatment, the enrollee must visit and use health care providers who are willing to accept the Blue Advantage's terms of payment or health care providers who

---

[1] While the parties to this action have attempted to explain this system in their filings, the clearer and more comprehensive explanation upon which this paragraph is based comes from *Dial v. Healthspring of Alabama, Inc.*, 541 F.3d 1044, 1046 (11th Cir. 2008).

have contracted with the insurer to accept Blue Advantage's terms or who are a part of the Blue Advantage's network of healthcare providers.

Southern Springs operates offers skilled nursing services at a nursing home healthcare facility that treats and cares for patients. In August of 2008, Southern Springs and BCBS entered into a contract. Under the terms of the contract, Southern Springs was to provide healthcare services to Blue Advantage enrollees seeking treatment at its facilities and BCBS would compensate Southern Springs for providing these services. Because the enrollees in the Blue Advantage plan are Medicare beneficiaries, the contract between Southern Springs and BCBS provided that BCBS was to provide the same basic benefits and coverage to an enrollee in the Blue Advantage plan as would be provided to that patient if he was enroll in Part A or B of Medicare. Southern Springs alleges that this means that if Medicare would cover it, then BCBS must also cover it for patients enrolled in Blue Advantage. Southern Springs further alleges that Medicare has developed guidelines and payment schedules for skilled nursing facilities known as Resource Utilization Group Guidelines ("RUG Guidelines"). The RUG Guidelines dictate if there is coverage and the length of coverage available.

Southern Springs alleges that BCBS has wrongfully and tortiously failed to provide coverage and benefits for Medicare-covered services it has performed for Blue Advantage enrolled patients despite having a legal and contractual duty to do so. Specifically, Southern Springs alleges that BCBS refuses to follow the RUG Guidelines and instead uses a different

system to determine whether claims are covered. BCBS allegedly does this to reduce costs and boost profits. According to Southern Springs, this means that BCBS has not been providing the same coverage to Blue Advantage enrollees as they would have received under Medicare Part A. Because BCBS allegedly breached its legal and contractual duties to Southern Springs, it has suffered lost income and revenue.

Southern Springs brings claims on its own behalf and on behalf of proposed, as-yet-uncertified class. Southern Springs's Complaint against BCBS contained the following "counts": breach of contract, intentional interference with business relations, negligence and wantonness, unjust enrichment, and injunctive relief. At the end of the Complaint, Southern Springs sets forth the following:

> **PLAINTIFF/PUTATIVE CLASS MAKES NO CLAIMS PURSUANT TO ANY FEDERAL LAW; NOR DOES PLAINTIFF/PUTATIVE CLASS MAKE ANY CLAIM THAT WOULD GIVE RISE TO FEDERAL JURISDICTION. PLAINTIFF/PUTATIVE CLASS' CLAIMS ARISE SOLELY FROM STATE LAW.**

Doc. 1-1 at p. 16 (emphasis in original).

Within thirty days after being served with the Complaint, BCBS filed a Notice of Removal invoking this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Specifically, BCBS advanced three arguments. First, BCBS contends that the unjust enrichment claim set forth in Count IV of the Complaint is in substance a claim under the False Claims Act, 31 U.S.C. §§ 3729 and 3732. Second, BCBS contends that all of Southern Springs's claims are claims for Medicare benefits or are inextricably intertwined with claims

for Medicare benefits and therefore the claims "arise under the Medicare Act and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"). Finally, BCBS alleges that the Medicare Act, as amended by the MMA, completely preempts Southern Springs's claims. Just over a week after removing the action, BCBS filed an Amended Notice of Removal correcting an error in one of the paragraphs.

On April 28, 2010, Southern Springs filed a motion to remand. By this motion, Southern Springs argues that the Court does not have subject matter jurisdiction under any of the theories BCBS advances. The motion to remand has been extensively brief and is ready for disposition.

## DISCUSSION

**A. Limited Nature of Subject Matter Jurisdiction in Federal Courts**

Federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *Wymbs v. Republican State Exec. Comm.*, 719 F.2d 1072, 1076 (11th Cir.1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. See *Kokkonen*, 511 U.S. at 377.

**B. Removal under § 1441(b)**

Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). A defendant seeking to invoke

5

a federal court's subject matter jurisdiction by removing the action bears the burden of proving that federal jurisdiction exists. *See Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002). Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases when federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095. A civil action filed in state court may be removed to federal court under § 1441(b) if the claim is one "arising under" federal law.[2] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

Pursuant to 28 U.S.C. § 1331, federal courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether a claim arises under federal law, a court must examine the "well-pleaded" allegations of the complaint to determine whether those allegations present a federal question. *Id.* Thus, a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon federal law or the Constitution. *Id.* Because the plaintiff is master of the claim, he may avoid federal jurisdiction by relying exclusively on state law even where a federal claim is also available. *See, e.g., Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Dunlap v. G&L*

---

[2] Specifically § 1441(b) provides in pertinent part as follows:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

6

*Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004). Consequently, as a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim. *Id.* Ordinarily, this requires the claim for relief to be a federal claim in which federal law creates the cause of action.

The Supreme Court has long recognized an exception to the well-pleaded complaint rule by which a case can be found to "arise under" federal law even when the complaint contains only claims pursuant to state law. *See, e.g., Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-14 (2005) (outlining the development of this doctrine through Supreme Court case law). Unfortunately, the articulation of these narrow exceptions has varied over time which makes a coherent application of the case law difficult. Indeed, the United States Supreme Court, itself acknowledged this by explaining that it had not stated

> a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 821, 108 S.Ct 2166, 100 L.Ed.2d 811 (1988) (STEVENS, J., concurring). We have not kept them out simply because they appeared in the state raiment as Justice Holmes would have done, see *Smith, supra*, at 214, 41 S.Ct. 243 (dissenting opinion), but neither have we treated "federal issue" as a password opening federal courts to any state action embracing a federal point of law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

*Grable*, 545 U.S. at 314. Indeed, commentators, such as Wright and Miller, have noted that the problem of deciding when a case brought pursuant to state law but which involves issues

7

of federal law which are sufficiently central as to find that the case nevertheless arises under federal law, is one which has received significant attention in judicial opinions, but nevertheless that attention has failed to produce a single rationalizing principle which can explain all the decisions which exist. *See* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3562 (3d ed. 2008). Thus, in some instances, "even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims." *Dunlap*, 381 F.3d at 1290 (*citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)).

In order for the first of these exceptions to apply such that a court could find that a state-law claim raises substantial questions of federal law,

> federal law must be an essential element of the claim and the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another. The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. In other words, the state-law claim must really and substantially involve a dispute or controversy respecting the validity, construction or effect of the federal law.

*Dunlap*, 281 F.3d at 1290. The second of these exceptions, is complete preemption.[3]

---

[3] Complete preemption is to be distinguished from ordinary preemption. Ordinary preemption is an *affirmative defense*, which may be raised in both state and federal court, when a plaintiff's state law claims are substantively displaced by federal law. *Geddes v. American Airlines, Inc.*, 321 F.3d 1349, 1352 (11th Cir. 2003). Ordinary preemption will not provide a basis for removal. *Dunlap*, 381 F.3d at 1290 n.8. In contrast, complete preemption is a *jurisdictional rule* for assessing federal jurisdiction when a complaint purports to raise only state law claims. *Geddes*, 321 F.3d at 1353.

8

"Complete preemption occurs when federal law so occupies a given field that a state-law claim is transformed into a claim 'arising under' federal law." *Id.* The Supreme Court has made it plain that few federal statutes actually completely preempt state law claims. To date it has only found three federal statutes to completely preempt state law claims: § 301 of the Labor Management Relations Act, § 1132 of the Employee Retirement Income Security Act of 1974, and §§ 85 and 86 of the National Bank Act. *Beneficial Nat'l Bank*, 539 U.S. at 7-11. Complete preemption applied to those statutes because they "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Id.* at 8. The key inquiry in determining whether complete preemption should extend to a statute is congressional intent. *Dunlap*, 381 F.3d at 1291.

Due to the variety of grounds urged for subject matter jurisdiction in the removal papers, this case requires the Court to explore several different variations on the aforementioned avenues to a judicial determination that a case "arises under" federal law. First, BCBS contends that one of the claims in Southern Springs's complaint actually states a claim under a federal statute known as the False Claims Act. This contention invokes the case law concerning what it means to "arise under" federal law in its most straightforward meaning, namely stating a claim for relief pursuant to a federal statute. Second, BCBS contends that all of the claims in the complaint "arise under" the Medicare Act as amended by the MMA. This contention invokes case law finding that claims arise under federal law either because they are "inextricably intertwined" with federal law or because the state law

9

claims present "substantial questions" of federal law. Finally, BCBS contends that all of the claims in the complaint "arise under" federal law in that the Medicare Act as amended by the MMA completely preempts state law claims. The Court will address each of these contentions in turn.

## C. Removal Based on Unjust Enrichment Claims as False Claims Act Claim

BCBS contends that at least Count IV of the Complaint states a claim which, in substance, arises under the False Claims Act, a federal law. If this is correct, the Court could have original subject matter jurisdiction over this claim and could exercise supplement jurisdiction over the remaining claims in the lawsuit pursuant to 28 U.S.C. § 1367. The Complaint does not explicitly refer to or invoke any federal law for the relief Southern Springs seeks. To the contrary, the allegations of the Complaint specifically disavow any intention to seek a claim pursuant to any federal law. Of course, the labels a plaintiff applies to the claims in the complaint are not dispositive. *See Smith v. Local 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d 741, 748-49 n.6 (5th Cir. 1974)[4] (a reviewing court must look to the substance of the complaint, not the labels used in it). Consequently, BCBS exhorts this Court to inspect the complaint carefully to determine whether a federal claim is necessarily presented even though Southern Springs has couched its claim in terms of state law. Specifically, BCBS contends that certain allegations set forth in Count IV (Unjust

---

[4] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Enrichment) of the Complaint necessarily state a claim for relief pursuant to the 31 U.S.C. §§ 3729 and 3732, which are provisions of the False Claims Act.[5]  The Court disagrees and finds this argument an insufficient predicate upon which to hold that this Court has subject matter jurisdiction over this action.

The relevant sections of the False Claims Act "prohibit the presentment of false claims to the government and the use of false records or statements to get a false claim paid or approved." *Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1321-22 (11th Cir. 2009).  The government itself can initiate a civil action to enforce the False Claims Act or private individuals, called relators, may bring actions on behalf of the United States and receive a percentage of any recovery made on behalf of the government. *Id.* at 1322.  After arguing that Count IV fails to state an unjust enrichment claim for which relief can be granted under Alabama law, BCBS contends that the claim is really an allegation of wrongful retention of Medicare funds which can only be brought pursuant to the False Claims Act. What this contention misses is that the Complaint is utterly devoid of any allegations that BCBS submitted false claims to the federal government or defrauded the federal government. Southern Springs does not allege that BCBS obtained capitation fees from the federal government through fraud.  BCBS is being paid by the federal government to provide claims

---

[5]  Much of Southern Springs's arguments against the removal based on the unjust enrichment claim mistakenly view it as an attempt to remove based on a contention that the claim presents a substantial question of federal law, but this is not BCBS's argument. Instead, BCBS is claiming that the allegations of the complaint affirmatively allege a False Claims Act claim that has been improperly labeled as a state law claim.

management and insurance coverage and it is doing both. This fact makes it distinguishable from the cases on which BCBS relies. Thus, the Court cannot find that the Count IV of the Complaint arises under the False Claims Act and thereby provides subject matter jurisdiction over that claim.

**D. Removal Based on Claims "Arising Under" the Medicare Act and the MMA**

Next, BCBS argues that Southern Springs claims "arise under" the Medicare Act and the MMA. In both the Notice of Removal and the Amended Notice of Removal, BCBS contends that Southern Springs's claims are founded upon and arise under federal law in that they are claims for Medicare benefits or are "inextricably intertwined" with claims for Medicare benefits. *See* Doc. # 1 at ¶¶ 11 & 12; Doc. # 5 at ¶¶ 11 & 12. Indeed, in making this contention in the Notices of Removal, BCBS invokes the authority of *Heckler v. Ringer*, 466 U.S. 602 (1984), a Supreme Court case which recognized an action arising under the Medicare Act although it was not a direct claim for benefits. Specifically, BCBS contends that Southern Springs's claims are ultimately based upon a determination of what skilled nursing facilities coverage or benefits are due to enrollees in Blue Advantage. Despite having framed the question in this way in its removal papers, BCBS argues the issue somewhat differently in its opposition to Southern Springs's motion to remand. Rather than invoking *Heckler*, BCBS now invokes the test for whether a case "arises under" a federal law set forth in *Grable* and its progeny.

Southern Springs contends this *Grable*-based ground for removal was not properly

12

raised in the notice of removal. After an examination of the removal papers and the applicable case law, the Court disagrees. The Court acknowledges that this Court has held that a party may not assert a new and different basis for removal more than thirty days after the case has become removable. *See American Educators Finan. Corp. v. Bennett*, 928 F. Supp. 1113, 1115 (M.D. Ala. 1996) (Albritton, J.) (holding that a defendant, who had initially filed a notice of removal contending that the court had subject matter jurisdiction over the action because one of the claims in the case arose under federal copyright law, could not amend its ground for removal later to try to argue a different basis for federal question jurisdiction). Simply put, a removing defendant is stuck with the grounds for removal articulated in the notice of removal or any amendment to it made within the thirty-day period allowed for removal. "After that time, however, the notice may be amended only to set forth more specifically grounds for removal which were imperfectly stated in the original petition." *Id.* Here, BCBS has not changed the grounds for removal. It has just changed the case law on which it relies to establish that the originally stated ground for removal, "arising under" the Medicare Act as amended. As this Court has explained, the articulation of the applicable legal test for determining this kind of "arising under" jurisdiction has been less than uniformly articulated. Thus, BCBS may rely on other cases, such as *Grable*, at its progeny, which essential address the same kind of issue as is set forth in *Heckler* and its progeny.

Southern Springs also contends that this case does not arise under the Medicare Act or the MMA. The Court will address this issue under both the *Heckler*-type analysis and the

13

*Grable*-based approach in turn.

In the *Heckler*, the Supreme Court held that a claim may arise under the Medicare Act when "both the standing and the substantive basis for the presentation" of the claim is the Medicare Act, or if the claim is "inextricably intertwined" with a claim for Medicare benefits. *Heckler*, 466 U.S. 615, 624. Initially, BCBS claimed that the claims in this suit were inextricably intertwined with claims for Medicare benefits and consequently the Court had subject matter jurisdiction under *Heckler*. The Court disagrees.

In analyzing whether this case fits in the *Heckler* paradigm as BCBS contends, the Court finds *Rencare, Ltd. v. Humana Health Plan of Texas, Inc.*,[6] particularly instructive. In *Rencare*, a provider of medical services under contract with a Medicare Advantage plan insurance provider brought suit in state court alleging a variety of claims arising under state law including breach of contract. *Rencare,* 395 F.3d at 556-57. The dispute between the provider of services and the insurance provider in *Rencare* arose over the reimbursement of medical services provided to patients enrolled in the Medicare Advantage plan. *Id.* at 557. The insurance provider removed the action against it to federal court arguing that it belonged there because the claims arise under the Medicare Act as amended. *Id.* The district court agreed and kept the claims relating to the Medicare Advantage plan enrollees. *Id.* On appeal, the Fifth Circuit Court of Appeals reversed this finding and held that the claims did not arise under federal law and were not subject to federal subject matter jurisdiction. *Id.*

---

[6] 395 F.3d 555 (5th Cir. 2004).

In reaching this holding, the Fifth Circuit contrasted the claims in *Rencare* with the claims brought in *Heckler v. Ringer*, 466 U.S. 602 (1984), which it describes as the "seminal case discussing whether a claim 'arises under' the Medicare Act." *Rencare*, 395 F.3d at 558. The first significant difference was that in *Rencare*, unlike in *Heckler*, there were "no enrollees seeking Medicare benefits. *Id.* The second significant difference was that the government had no financial interest in the outcome of *Rencare* because it paid the insurance company a flat rate under Part C of Medicare, but it had a financial interest in *Heckler* because the enrollees were seeking benefits to be paid for by the government itself under Parts A or B of Medicare.

BCBS's attempts to meaningfully distinguish *Rencare* are simply not persuasive.[7] The

---

[7] Specifically, BCBS asserts that because Southern Springs alleges that Medicare beneficiaries are being denied services that BCBS was obligated and paid to authorize, the federal government has a financial interest in the funds at issue in this case. This misses the point *Rencare* makes. The federal government's interest in *Heckler* arises directly because enrollees in Medicare themselves were trying to get the government to cover certain medical procedures. The arrival on the scene of Part C changes everything because "under Part C, the government transfers the risk of providing care for [Medicare Advantage] enrollees to the [Medicare Advantage] organization." *Rencare*, 395 F.3d at 559. Thus, BCBS bears the ultimate responsibility for providing services to its Blue Advantage enrollee. *Id.* The government bears no responsibility for the providing services to those Blue Advantage enrollees. *Id. Rencare* turns on the shifting of risk provided under Part C and whether enrollees were directly seeking benefits through the lawsuit. Therefore, the fact that the enrollees in the *Rencare* case actually received the benefits that the medical services provider was seeking payment from the Medicare Advantage organization, does not render the holding of *Rencare* inapplicable to this case. While this is a factual distinction present, namely that Southern Springs has alleged that some enrollees are not receiving benefits under Blue Advantage which they are entitled to, this is not a fact that undermines the applicability of the holding of *Rencare*. This allegation does not, in and of itself, convert this into an action by medicare enrollees seeking benefits.

15

dispute here is between a private provider of skilled nursing care and BCBS. Neither the government, nor any Medicare enrollees are parties to this action. This is not a legal action brought by enrollee to directly seek benefits to which they claim to be entitled pursuant to the Medicare Act. Moreover, because this action concerns only Medicare benefits under Part C, no government funds are at risk whatever the outcome of the litigation may be. The Court is persuaded that this case neither arises under Medicare, nor is it inextricably intertwined with a claim for Medicare benefits. Unfortunately, due to the many different ways that Courts have examined the issue of "arising under" jurisdiction, this does not end the Court's inquiry as it must now turn to BCBS's contention that under the *Grable*-type analysis of the question, the case arises under the Medicare Act as amended.

Southern Springs argues that its state law claims do not raise a substantial federal issue. In so arguing, it relies nearly exclusively on several cases decided before *Grable*. Consequently, they are of little assistance in determining whether the case presents a substantial federal issue as that term is understood after *Grable*. Only one of the cases on which Southern Springs bases its argument, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008), actually applies a post-*Grable* analysis.

As articulated in *Grable* and its progeny, in this small class of cases "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

Though federal law does not create the cause of action in this small class of cases, an essential, necessary elements of the plaintiff's right to recover still must be founded on federal law. *Id.* at 315. Since deciding *Grable*, the Supreme Court has emphasized that this doctrine applies in only a "special and small" category of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). Indeed, *Empire* emphasized that the key factors in *Grable* which made the exercise of federal court jurisdiction appropriate included the fact that the dispute in *Grable* centered on the action of a federal agency and the compatibility of that action with federal law. *Empire*, 547 U.S. at 700. *See also, Adventure Outdoors*, 552 F.3d at 1296-97. Moreover, the *Grable* case involved the resolution of a nearly pure issue of law. *Id.* This made it more appropriate for federal jurisdiction than a case that was fact-bound and situation specific especially where the dispute was between private parties. *Id.*

In this case, Southern Springs brings claims for breach of contract, intentional interference with business relations, and negligence and wantonness. Southern Springs alleges that BCBS is contractually obligated to reimburse Southern Springs for providing healthcare services to Blue Advantage enrollees if the services which the contract describes by reference to the scope of Medicare coverage. Southern Springs also contends that BCBS is legally obligated to provide the same services to Blue Advantage enrollees as they would have received if they had not enrolled in Blue Advantage under Part C of Medicare and elected instead to stick with the coverage provided under Part A and B of Medicare.

Southern Springs contends that the way that BCBS is making coverage determinations has resulted in its Blue Advantage enrollees receiving less coverage than they are entitled to receive. Specifically, Southern Springs contends that BCBS allows fewer days of skilled nursing care. With coverage limited in this way, the enrollees must either pay for the services themselves or forego the services altogether. If they select the later option, then Southern Springs has less business. If BCBS has no right under federal law to limit coverage as it has, then Southern Springs contends its harm caused by that improper limitation is actionable under the state law claims it has asserted. These allegations do put the interpretation of the requirements of the Medicare Act as amended and regulations and guidelines promulgated under the Medicare Act at the center of this lawsuit. Thus, there are actually disputed issues of federal law central to this case. However, this is a dispute between private parties and the actions at the center of the lawsuit are those taken by BCBS, a private party, and not a federal actor. Thus, unlike *Grable*, where there was a central question about the compatibility of the actions of a federal actor and a federal statute, this case examines the compatibility of the actions of a private actor and a federal statute. Moreover, unlike *Grable*, where the issues were purely issues of law, the determination of the central issues here will be more fact-bound and situation specific. Indeed, this is evident in that BCBS defends the coverage it offers in part because it claims that Medicare does not require more without a treating doctor's specific finding that the services are reasonable and necessary. Thus, the inquiry here is necessarily more fact-bound and situation-specific.

Thus, under the *Grable* test, Southern Springs's claims do not provide a sufficient basis for the exercise of federal jurisdiction because although they raise a disputed federal issue, they do not raise a "substantial issue of federal law" as is required.

### E. Removal Based on Complete Preemption

In addition to the previously discussed grounds for federal subject matter jurisdiction, BCBS also contends that the Medicare Act, which contains an express preemption provision and an exclusive federal remedy, completely preempts claims pursuant to state law such that the only avenue for judicial review is to bring a claim under the Medicare Act itself, rather than under federal law. Simply put, BCBS contends that the remedial scheme in the Medicare Act is the exclusive remedial scheme for claims such as those Southern Springs would bring. Complete preemption applies where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Complete preemption is a "narrow" exception to the well-pleaded complaint rule, and the United States Supreme Court has only applied the doctrine to certain causes of action under the Labor Management Relations Act, the Employees Retirement Income Security Act, and the National Bank Act. *See generally Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11 (2003). Specific prerequisites must be satisfied for the complete preemption doctrine to apply. First, the statute relied upon by the defendant as preemptive must contain the exclusive cause of action

19

for the claim asserted and set forth procedures and remedies governing that cause of action. *Id.* at 8.  Second, there must be a clear indication that "Congress intended the federal cause of action to be exclusive." *Id.* at 9 n.5.

The statutory provisions which BCBS cites[8] do not satisfy the test for complete preemption as articulated by the United States Supreme Court in *Beneficial*.  Even when all of those provisions and the implementing regulations are considered together, the Court cannot find a clear Congressional intent that the Medicare Act as amended by the MMA provides an exclusive private federal remedy encompassing the claims asserted. Accordingly, this Court lacks subject matter jurisdiction over this case and the case must be remanded to state court.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

(1)  Plaintiff's Motion to Remand (Doc. # 7) is GRANTED;

(2)  This case is REMANDED to the Circuit Court for Bullock County, Alabama;

(3) The Clerk is DIRECTED to take appropriate steps to promptly effect the remand.

DONE this the 22nd day of March, 2011.

                                        /s/ Mark E. Fuller
                                  CHIEF UNITED STATES DISTRICT JUDGE

---

[8]  42 U.S.C. §§ 405(g), 1395w-22(g)(5), and 1395w-26(b)(3).